**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jose Amado Bonilla,<br><br>                              Petitioner,<br><br>                    -v-<br><br>Pam Bondi, *Attorney General of the United States*; Kristi Noem, *Secretary of the Department of Homeland Security*; Todd M. Lyons, *Acting Director, United States Immigration and Customs Enforcement in their official capacities*; Brian Flanagan, *Acting Deputy Field Office Director for ICE in New York City Area, in their official capacities*,<br><br>                              Respondents. | 2:26-cv-757<br>(NJC) |

**AMENDED MEMORANDUM AND ORDER[1]**

NUSRAT J. CHOUDHURY, United States District Judge:

On February 10, 2026, Jose Amado Bonilla filed this Petition seeking a writ of habeas corpus under 28 U.S.C. §§ 2241, 2243 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Pet., ECF No. 1.) The Petition argues that ICE's detention of Mr. Bonilla without notice and opportunity to be heard since January 24, 2026 violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the Administrative Procedures Act; and that his detention is governed by 8 U.S.C. § 1226(a) ("Section 1226(a)"), not 8 U.S.C. § 1225(b)(1) or (b)(2) (respectively, "Section 1225(b)(1)" and "Section 1225(b)(2)"). (*Id.* ¶¶ 23–48.) The Petition seeks the following relief: (1) a writ of habeas corpus requiring Respondents to immediately release Mr. Bonilla; (2) any other relief this

---

[1] This Amended Memorandum and Order is an amendment of the February 12, 2026 Memorandum and Order granting the Petition in part. (*See* ECF No. 11.)

Court deems just and proper. (Pet. at 12.)[2] For the reasons explained below, the Petition is GRANTED.

Respondents are federal government officials named in their official capacities: (1) Pamela Bondi, in her official capacity as Attorney General, U.S. Department of Justice; (2) Kristi Noem, in her official capacity as Secretary, U.S. Department of Homeland Security ("DHS"); (3) Todd M. Lyons, in his official capacity as Acting Director of Immigration and Customs Enforcement; and (4) Brian Flanagan, in his official capacity as Acting Deputy Field Office Director for ICE in the New York City area.

"While reserving all rights, including the right to appeal," Respondents acknowledge in a letter filed on February 11, 2026 in lieu of a formal brief that although Respondents "respectfully disagree[] with the Court's decisions in *Rodriguez-Acurio*, *Covelli-Chaparro*, [*Valdez*] *Acevedo*, [and *Munoz*] *Caraguay*, the government acknowledges that the decisions would control the result in this case . . . ." (Resp. to Order to Show Cause ("Resp.") at 2, ECF No. 8.) As a result, Respondents have "no objection to the Court deciding the petition on the papers in lieu of a hearing" and instead rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.), ECF No. 21. (Resp. at 2, 4.)

---

[2] The Petition also seeks the following relief: (1) an Order to Show Cause requiring Respondents show cause why this Petition should not be granted within three days, and (2) a stay of any transfer of Mr. Bonilla outside of the New York City metropolitan area. (Pet. at 12.) On February 10, 2026, the Court effectively granted this relief through the issuance of a Stay of Removal and Order to Show Cause, which requires Respondents to respond to the Petition by February 12, 2026, and prohibits Respondents from transferring Mr. Bonilla outside of the Eastern District of New York, Southern District of New York, and District of New Jersey. (ECF No. 3.)

2

Respondents argue that ICE's detention of Mr. Bonilla falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Resp. at 2.) According to Respondents, Section 1225(b)(2) requires Mr. Bonilla's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained in this Memorandum and Order as well as in this Court's prior decision in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026). The *Rodriguez-Acurio* decision is incorporated by reference in its entirety in this Memorandum and Order.

Section 1225(b)(2)(A) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not *clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). This language requires that "several conditions must be met" to impose mandatory detention under Section 1225(b)(2). *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025). The noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Id.*; *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass., 2025).

Here, Mr. Bonilla is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the

3

time that ICE detained him, Mr. Bonilla had been living in the interior of the United States for more than two decades, since around 2003. (Pet. ¶ 1 n.1; Declaration of Jason Langlois ("Langlois Decl.") ¶ 4, ECF No. 8 at 6–8.) Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* Resp.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[3] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v.*

---

[3] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

*U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[4] The Fifth Circuit recently reached the opposition conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.[5]

Moreover, there is an additional problem with Respondents' invocation of Section 1225(b)(2) to justify the detention in this action. First, nothing in the record shows that ICE arrested and detained Mr. Bonilla under Section 1225(b)(2) rather than Section 1226(a). By contrast, the warrant reflects that Mr. Bonilla was arrested pursuant to "sections 236 and 287 of

---

[4] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

[5] Respondents rely on *Saamishvili v. Flanagan*, et al., No. 25-cv-6178, 2026 WL 377574, at *3 (E.D.N.Y. Feb. 11, 2026), to support their expansive interpretation of Section 1225(b)(2) in this case. (ECF No. 10). This Court respectfully disagrees with *Saamshvili* about the scope of Section 1225(b)(2). Additionally, the petitioner in that case was subject to an order of removal, and it is unclear whether the removal order was final such that a different INA provision—8 U.S.C §1231(a)(2)(A)—governed the petitioner's detention pending removal.

the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2). (Form I-200 Warrant for Arrest of Alien, ECF No. 8 at 10). Respondents first invoked Section 1225(b)(2) as the basis for Mr. Bonilla's detention only in the course of this litigation. (Resp. at 2.) The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez*, 795 F. Supp. 3d at 486; *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Finally, in the alternative to their invocation of Section 1225(b)(2), Respondents argue that ICE has authority to detain Mr. Bonilla pursuant to his purported agreement to voluntarily depart the United States as set forth on a Form I-210 Voluntary Departure and Verification of Departure. (ECF No. 10 at 1; Form I-210, ECF No. 8 at 14.) However, as a factual matter, Mr. Bonilla has *withdrawn* his request for voluntary departure because that request was made "upon

6

his detention and based on his belief that his detention would be *indefinite*." (Pet. Ltr., ECF No. 9 at 1 (emphasis added).) As Respondents acknowledge, in *Dada v. Mukasey*, 554 U.S. 1, 21 (2008), the Supreme Court held that a non-citizen may withdraw a request for voluntary departure at any time before the expiration date. Here, that expiration date is March 3, 2026, and Mr. Bonilla validly withdrew his voluntary departure request. (Form I-210, ECF No. 8 at 14.)[6] Moreover, both in his written submissions and in response to Court's questions at the February 12, 2026 hearing, Mr. Bonilla made clear that he signed the Form I-210 under duress.[7] (Hr'g Tr. 5:23–6:7.) Mr. Bonilla testified under oath that two ICE officers presented him with the form after his arrest, in a facility in or adjacent to the Nassau County Jail. (*Id*. 6:9–7:2.) Mr. Bonilla credibly testified that he felt "forced" and "obliged" to sign the form, and that ICE did not provide him an opportunity to speak with his counsel prior to signing. (*Id*. 7:17–8:9.) He further credibly testified that he felt fearful, making it difficult for him to know what to do. (*Id*. 7:13–15; 8:7–9.) Accordingly, the voluntary departure agreement, which is no longer in effect and was procured under duress, does not permit ICE to detain Mr. Bonilla.

Accordingly, ICE's detention of Mr. Bonilla is not governed by Section 1225(b)(2) or any voluntary agreement, but by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Bonilla has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding

---

[6] At the February 12, 2026 hearing, Respondents did not challenge Mr. Bonilla's withdrawal of the voluntary departure request.

[7] At the hearing, Respondents stated that they did not object to the Court asking Mr. Bonilla questions about the context in which he signed the voluntary departure request. The Court provided counsel for both parties to ask Mr. Bonilla questions, and both sides declined.

Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. (Resp. at 2; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[8]) ICE's detention of Mr. Bonilla without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Bonilla since January 24, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Bonilla without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Bonilla because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on January 24, 2026.

---

[8] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

(*See* Pet. ¶¶ 4–5; Langlois Decl. ¶¶ 4–6.) Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Bonilla without notice or an opportunity to be heard.

Although the Attorney General may have a legitimate government interest in preventing danger to the community and ensuring the appearance of noncitizens at immigration proceedings, there is absolutely nothing in the record showing that Mr. Bonilla presents a danger to the community or flight risk. To the contrary, Mr. Bonilla has been living in the United States since 2003 and has no criminal record whatsoever. (Pet. ¶¶ 1 n.1, 2.) Moreover, although he has been in ICE custody since January 24, 2026, he has not been served with a Notice to Appear and there are no pending removal proceedings.

Not only does Mr. Bonilla pose no safety or flight risk, nothing in the record suggests that a DHS officer made *any* individualized determination that Mr. Bonilla presented a risk of danger or flight *prior to* ICE's arrest and detention of him on or around January 24, 2026. As a threshold matter, Mr. Bonilla has never been subject to removal proceedings and, at this time, there are no pending removal proceedings against him. Rather, ICE Supervisory Detention and Deportation Officer Jason Langlois sets forth hearsay that unnamed ICE officers "encountered" Mr. Bonilla in Hempstead, New York, "during which Petitioner agreed to voluntarily answer questions" and "admitted to the ICE officers that he is a citizen and national of El Salvador . . . and admitted he entered the United States illegally . . . ." (Langlois Decl. ¶ 4.) Langlois declines to identify the source of this hearsay. (*See id.* ¶ 2 (acknowledging generally that statements in the declaration are based on "[his] review of DHS records and databases maintained in the ordinary course of business, including [his] review of DHS records for [Petitioner], consultation with [his] colleagues, and [his] personal knowledge" without identifying supporting sources or

9

records for the facts set forth in paragraph 4).) However, the face of the Form I-200 Warrant plainly identifies "100 Carman Avenue, East Meadow, New York"—the address of the Nassau County Jail, where ICE first transported Mr. Bonilla after his arrest—as the location where ICE served the warrant on Mr. Bonilla, not Hempstead, where ICE officers arrested him. (Form I-200, ECF No. 8 at 10.)

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Bonilla's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—Respondents' detention of Mr. Bonilla with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Bonilla was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2).[9] *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres*, 2025 WL 3168759, at \*5 (same).

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v.*

---

[9] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Bonilla, that provision is plainly inapplicable to him. Mr. Bonilla is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at \*19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at \*15. Accordingly, ICE's detention of Mr. Bonilla since January 24, 2026 is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

*Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Bonilla from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Bonilla is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Bonilla is not rendered meaningless.

Finally, for the avoidance of doubt, the Court concludes that Mr. Bonilla "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to his unlawful detention, Mr. Bonilla was not subject to any electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Bonilla without requiring him to wear an ankle monitor.

11

## CONCLUSION

Accordingly for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is GRANTED in part. As ordered at the February 12, 2026 hearing, Respondents must release Mr. Bonilla immediately, without any ankle monitor. Additionally, pending the issuance of any final removal order against Mr. Bonilla, Respondents are enjoined from denying Mr. Bonilla bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

The Court's February 12, 2026 Memorandum and Order granting the Petition in part required Respondents to coordinate with counsel for Mr. Bonilla to return to him all of his belongings, including his cell phone, clothing, money, and all of his forms of identification that were seized from him by February 17, 2026. It further required Petitioner to file, by February 18, 2026, a submission with the Court confirming that Mr. Bonilla has received all of his belongings. The parties have provided status updates to the Court and are working together to ensure that Mr. Bonilla's Salvadoran identification card is returned to him, as required by this Court's Orders. (*See* ECF Nos. 12, 13, 14.)

The Court concludes that the other arguments set forth in the Petition for granting Mr. Bonilla the requested relief, including arguments that the detention violates the Fifth Amendment right to substantive due process and the APA, are now moot and unnecessary to resolve. The matter is held in abeyance.

Dated:  Central Islip, New York
        February 20, 2026

  /s/ Nusrat J. Choudhury
  NUSRAT J. CHOUDHURY
  United States District Judge

12